Case 2:13-cv-02264-PM-KK Document 30 Filed 05/30/14 Page 1 of 12 PageID #: 996

RECEIVED
IN LAKE CHARLES, LA.
MAY 30 2014
TONY R. MOORE/CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| LBUBS 2004-C8 DEREK DRIVE, L.L.C. | * | CIVIL ACTION NO. 2:13-CV-2264 |
| **Plaintiff** | * | |
| V. | * | JUDGE MINALDI |
| VITO GERBINO, VINCENT GERBINO, & FRANCES GERBINO | * | |
| | * | MAGISTRATE JUDGE KAY |
| **Defendants** | * | |

## MEMORANDUM RULING

Before the court is the Motion for Summary Judgment [Doc. 14], filed by LBUBS 2004-C8 Derek Drive, L.L.C. (plaintiff), a Louisiana limited liability company, to which Vito Gerbino, Vincent Gerbino, and Frances Gerbino (defendants) have filed an Opposition [Doc. 16], and the plaintiff has filed a Reply [Doc. 22]. Also before the court is the defendants' Cross Motion for Summary Judgment [Doc. 17], to which the plaintiff has filed an Opposition [Doc. 23] and the defendants have filed a Reply [Doc. 24].[1] For the following reasons, the plaintiff's Motion [Doc. 14] is hereby **GRANTED**, and the defendants' Motion [Doc. 17] is hereby **DENIED**.

## FACTS & PROCEDURAL HISTORY

The plaintiff alleges that it is the holder in due course of a promissory note (the note), dated July 28, 2004, made by Lake Charles Retail Development, L.L.C. (LCRD), and payable to Lehman Brothers Bank FSB (Lehman) in the amount of $7,040,000.00.[2] On the same date, the defendants executed a document entitled Commercial Guaranty of Recourse Obligations of

---

[1] There have also been a number of supplemental filings in connection with these motions. *See* [Docs. 28 & 29].
[2] Compl. [Doc. 1], at ¶ 6. *See also* Promissory Note [Doc. 14-2].

1

Borrower (Commercial Guaranty),[3] in which they "jointly and severally," "absolutely and unconditionally guarantee[d]" the loan made by Lehman to LCRD.[4]

The note was issued in conjunction with, and secured by, a mortgage and security agreement[5] wherein LCRD, as mortgagor, agreed to mortgage certain property[6] to Lehman. On July 1, 2013, the property became an asset in a voluntary bankruptcy proceeding commenced in the United States Bankruptcy Court for the Eastern District of New York.[7] The plaintiff alleges that, as LCRD is now in default under the terms of the note, the defendants are now liable for the full amount of the note as guarantors, per their agreement.[8]

The plaintiff has submitted a number of allonges demonstrating how the plaintiff came to be the holder of the note. On November 12, 2012, Aurora Bank FSB, formerly known as Lehman Brothers Bank, FSB, endorsed and transferred the note to Lehman Brothers Holding, Incorporated.[9] On November 26, 2012, Lehman Brothers Holdings, Incorporated, endorsed and transferred the note to LaSalle Bank National Association (LaSalle), as trustee for the registered holders of LB-UBS Commercial Mortgage Trust 2004-C8 (the trust).[10] The note was then endorsed and transferred to U.S. Bank National Association, in its capacity as trustee for the registered holders of LB-UBS Commercial Mortgage Trust 2004-C8, by Bank of America, N.A., as successor by merger to LaSalle.[11] Then, U.S. Bank National Association transferred the note to LBUBS 2004 C-8 Derek Drive, L.L.C.[12]

---

[3] *See generally* Commercial Guaranty [Doc. 1-2].
[4] *See id.* at 1.
[5] *See generally* Mortgage and Security Agreement [Doc. 14-3].
[6] *See* Agreement to Purchase and Sell Property Description [Doc. 14-3], as an addendum to the Mortgage and Security Agreement [Doc. 14-3].
[7] *See* Bankruptcy Pet. [Doc. 1-2], at 21-24. *See also* Compl. [Doc. 1], at ¶ 8.
[8] Compl. [Doc. 1], at ¶¶ 9-10. *See also* Aff. of John Yee [Doc. 1-2].
[9] Allonge [Doc. 14-2], at 14.
[10] Allonge [Doc. 14-2], at 15.
[11] Allonge [Doc. 14-2], at 16.
[12] Allonge [Doc. 14-2], at 17. *See generally* Pl.'s Reply [Doc. 22], at 11-12.

The Commercial Guaranty states that the guarantors—the defendants, herein—shall be liable for "the entire Debt . . . (ii) if the Property or any part thereof shall become an asset in (1) a voluntary bankruptcy or insolvency proceeding."[13] The Commercial Guaranty further provides that the guarantors shall "reimburse Lender, to the extent that such reimbursement is not made by Borrower [LCRD], for all expenses (including reasonable counsel fees) incurred by Lender in connection with the collection of the Guaranteed Recourse Obligations of Borrower or any portion thereof or with the enforcement of this Guaranty."[14] The Commercial Guaranty, by its own terms, was executed "for the benefit of [Lehman] and for such other person or persons as may from time to time become or be the holders of all or any part of the Debt."[15]

The plaintiff filed suit on July 15, 2013, invoking the court's diversity of citizenship subject matter jurisdiction under 28 U.S.C. § 1332.[16] The plaintiff requests that a judgment be entered in its favor and against the defendant-guarantors for the remaining principal amount of $6,143,156.43,

> plus interest through July 3, 2012 in the amount of $122,204.45, plus default interest in the amount of $329,469.58, plus late fees in the amount of $47,865.07, plus other fees in the amount of $178,503.02, plus prepayment premium in the amount of $375,626.65, plus interest thereafter until paid, plus attorney's fees, plus all other reasonable costs, including court costs, incurred by plaintiff in the collection thereof minus funds held in suspense in the amount of $70,584.36; [and] for attorney's fees and costs[.][17]

On October 3, 2013, the plaintiff filed the instant Motion for Summary Judgment [Doc. 14]. The defendants have filed a Cross-Motion for Summary Judgment [Doc. 17], which addresses essentially the same issues. The defendants' primary argument challenges the validity of the

---

[13] Commercial Guaranty [Doc. 1-2], at 1.
[14] *Id.* at 2.
[15] *Id.* at 4.
[16] Compl. [Doc. 1], at ¶1.
[17] Compl. [Doc. 1], at ¶ 18.

3

transfer of the note to the plaintiff, thereby challenging the plaintiff's ability to enforce the note.[18] As discussed below, this argument is without merit.

## LAW & ANALYSIS

A grant of summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. PRO. 56(a). A dispute is said to be "genuine" only where "a reasonable jury could return a verdict for the non-moving party." *Dizer v. Dolgencorp, Inc.*, No. 3:10-cv-699, 2012 U.S. Dist. LEXIS 24025, at *16 (W.D. La. Jan. 12, 2012) (*citing Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006)). In ruling upon a motion for summary judgment, the district court shall draw all inferences in a light most favorable to the nonmoving party. *Id.* at *3 n.1 (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (additional citation omitted)). "Rule 56[(a)] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Webber v. Christus Schumpert Health Sys.*, No. 10-1177, 2011 U.S. Dist. LEXIS 99235, at *14 (W.D. La. Sept. 2, 2011) (*citing Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004)). "The non-movant cannot preclude summary judgment by raising 'some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions, or by only a scintilla of evidence.'" *Cormier v. W&T Offshore, Inc.*, No. 10-1089, 2013 U.S. Dist. LEXIS 53416, at *18-19 (W.D. La. Apr. 12, 2013) (*citing Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

As a preliminary note, Louisiana law is applicable to the central dispute herein over the note and the Commercial Guaranty, in accordance with the choice-of-law provisions set forth

---

[18] *See, e.g.*, Def.'s Opp. [Doc. 16], at 1.

4

therein.[19] The plaintiff's arguments are fairly straightforward, and essentially assert that, as there are no disputed facts herein, and because of the defendants' joint and several liability under the Commercial Guaranty resulting from LCRD's having filed for bankruptcy, the defendants are liable for payment on the note, and a grant of summary judgment is appropriate.[20] The defendants' chief contention, however, is that the plaintiff is not a valid holder of the note, and, therefore, it may not legally enforce the note upon the defendant-guarantors.[21]

On November 12, 2004, LBUBS Commercial Mortgage Trust 2004-C8 was created by Lehman Brothers Holdings, Inc., as sponsor; Structured Asset Securities Corporation II (SAS), as depositor; and LaSalle, as the trustee.[22] The trust was created pursuant to a Pooling and Servicing Agreement (PSA),[23] which the defendants assert is governed by New York law.[24]

---

[19] A federal court sitting in diversity is bound to follow the choice-of-law provisions of the forum state. *See Cherokee Pump & Equip. v. Aurora Pump*, 38 F.3d 246, 250 (5th Cir. 1994) (*citing Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)). Under Louisiana law, contractual choice-of-law provisions are effective "except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537." LA. CIV. CODE ANN. art. 3540 (1992). *See Marsala v. Mayo*, No. 06-3846, 2007 U.S. Dist. LEXIS 81550, at *25-26 n.19 (E.D. La. Nov. 2, 2007) (citation omitted) (stating that "[u]nder Louisiana law, contracting parties are free to choose which state's law governs disputes arising out of their contracts; those choice of law provisions are presumptively valid."). *See also R.R. Mgmt. Co. L.L.C. v. CFS La. Midstream Co.*, 428 F.3d 214, 222 (5th Cir. 2005) (citation omitted) (stating that "[w]here there are no differences between the relevant substantive laws of the respective states, there is no conflict, and a court need not undertake a choice of law analysis").
The parties are in agreement as to the applicability of Louisiana law to the dispute over the note and Commercial Guaranty. *See* Pl.'s Memo. in Supp. [Doc. 14-1], at 5-7; Def.'s Opp. [Doc. 16], at 9. *See also* Promissory Note [Doc. 14-2], at ¶ 16 (stating that "[t]his Note shall be governed, construed, applied and enforced in accordance with the laws of the state in which the Property is located and the applicable laws of the United States of America"); *see also id.* at ¶ 1(i) (defining "Security Instrument" as the agreement "given by Borrower to . . . Lender covering the fee estate of Borrower in certain premises located in Calcasieu Parish, State of Louisiana"). *See also* Mortgage and Security Agreement [Doc. 14-3], at ¶ 15.1 (Choice of Law). *See also* Mortgage and Security Agreement, Ex. A (Description of Land) [Doc. 14-3], at 40-41 (stating that "ALL of that certain lot, piece or parcel of land, with the buildings and improvements thereon, situate[d], lying and being in Calcasieu Parish, Louisiana," and particularly described thereafter).
[20] *See* Pl.'s Memo. in Supp. [Doc 14-1], at 5-7.
[21] Def.'s Opp. [Doc. 16], at 8-10.
[22] *See* Def.'s Opp. [Doc. 16], at 4.
[23] "A PSA is one of a number of 'complex, interrelated contracts' typically executed when a mortgage-securitization trust is formed." *Saucedo v. Deutsche Bank National Trust Company*, No. SA-12-CV-868, 2013 U.S. Dist. LEXIS 23427, at *2 n.2 (W.D. Tex. Feb. 20, 2013) (*citing Chase Manhattan Mortg. Corp. v. Advanta Corp.*, No. Civ. A. 01-507 KAJ, 2005 U.S. Dist. LEXIS 19374, at *1 (D. Del. Sept. 8, 2005)).
[24] *See* Def.'s Opp. [Doc. 16], at 4 (citation omitted).

5

The defendants argue that, in order to be treated as a real estate mortgage investment conduit (REMIC), as the trust was originally intended, and thus in order to be eligible for a more favorable tax status,[25] both the PSA and the Internal Revenue Code (IRC) "required all of the LBUBS Trust's assets [to] be transferred to Lasalle within ninety (90) days of the closing date identified in the PSA. The PSA's closing date was December 2, 2004."[26] The transfer to LaSalle, however, was not completed until 2012. Thus, the defendants state that the transfer of the note to LaSalle "violated the PSA and rendered that transfer void *ab initio*."[27] In effect, the defendants argue that the note was transferred in contravention of the trust, in violation of New York law, and was thus an invalid transfer at the time it occurred.[28] If this transfer was invalid, any subsequent transfer to the plaintiff would also have been invalid, resulting in the plaintiff's inability to enforce the Commercial Guaranty of the note.

The PSA provision that the defendants allege was violated states as follows:

> Following the Startup Day, none of the Trustee, the Master Servicer and the Special Servicer shall accept any contributions of assets to any REMIC Pool unless it shall have received an Opinion of Counsel (at the expense of the party seeking to cause such contribution and in no event at the expense of the Trust Fund or the Trustee) to the effect that the inclusion of such assets in such REMIC Pool will not cause: (i) such REMIC Pool to fail to qualify as a REMIC at any time that any Certificates are outstanding; or (ii) the imposition of any tax on such REMIC Pool under the REMIC Provisions or other applicable provisions of federal, state and local law or ordinances.[29]

Thus, per the terms of the trust, contributions of assets may be made to the trust after the startup day provided that an opinion of counsel was given stating that either the REMIC pool would not fail to qualify as a REMIC as a result of the transfer of assets, or stating that the transfer would

---

[25] *See* Def.'s Opp. [Doc. 16], at 3 (*citing* I.R.C. § 860A(a) (2006)).
[26] *Id.* at 5.
[27] *Id.* at 6.
[28] *See* Def.'s Opp. [Doc. 16], at 8 (*citing* N.Y. EST. POWERS & TRUSTS LAW § 7-2.4 (Gould 2008)). "If the trust is expressed in the instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void." N.Y. EST. POWERS & TRUSTS LAW § 7-2.4 (Gould 2008).
[29] *See* PSA [Doc. 16-4], at 58, Section 10.01(l). *See also* Def.'s Opp. [Doc. 16], at 8 n.30.

6

not result in any additional tax liability. However, the defendants do not even allege, let alone prove, that no opinion of counsel was either given or received in the instant case, which would render as moot the defendants' arguments with regard to the transfer having potentially violated the PSA. Nevertheless, it shall be assumed, *arguendo*, that the transfer did in fact violate the PSA as the defendants allege.

The defendants cite *Wells Fargo Bank, N.A. v. Erobobo*, 972 N.Y.S.2d 147 (N.Y. Sup. Ct. 2013), in support of their argument that the transfer was invalid.[30] In *Erobobo*, a mortgage loan had been issued by Bank A, which then assigned the note and mortgage to Bank B, which then assigned the note and mortgage to the plaintiff Bank. *Id.* When the plaintiff Bank brought an action to foreclose on the mortgage, the defendant argued that the transfers were invalid because the PSA therein required all mortgages in the trust to have been deposited by the closing date; the mortgage in question had not been timely transferred, in violation of the PSA. *Id.* The court then denied the plaintiff Bank's motion for summary judgment, predicated at least in part on the fact that the plaintiff had failed to submit a letter from counsel demonstrating compliance with a PSA term—similar to the PSA term in the instant case—requiring such an Opinion of Counsel before the trust could accept a transfer after the startup date. *Id.*

"*Erobobo*'s reasoning, however, has been generally criticized by courts around the country . . . ." *Davis v. Countrywide Home Loans, Inc.*, No. H-13-623, 2014 U.S. Dist. LEXIS 26469, at *15 n.8 (S.D. Tex. Mar. 3, 2014) (*citing Felder v. Countrywide Home Loans*, No. H-13-0282, 2013 U.S. Dist. LEXIS 179033, at *19 n.170 (S.D. Tex. Dec. 20, 2013); *Halacy v. Wells Fargo Bank, N.A.*, No. 12-11447-TSH, 2013 U.S. Dist. LEXIS 165651, at *3 (D. Mass. Nov. 21, 2013); *Sigaran v. U.S. Bank Nat'l Ass'n*, No. H-12-3588, 2013 U.S. Dist. LEXIS 75033, at *3 (S.D. Tex. May 29, 2013)). The United States Court for the Southern District of

---

[30] *See* Def.'s Opp. [Doc. 16], at 8 n.31.

Texas recently stated that "*Erobobo*'s holding, from a New York trial court, does not accurately reflect New York trust law as would be interpreted by the state's court of last resort, the Court of Appeals of New York." *Id.* (citation omitted). The *Davis* court, acknowledging that § 7-2.4 of the New York Estates, Powers and Trusts Code (§ 7-2.4) declares void any acts by a trustee in contravention of the trust, recognized that "courts applying the law have treated improper transfers as subject to ratification and therefore [such transfers are] *voidable*, not void." *Id.* (*citing Mooney v. Madden*, 193 A.D. 2d 933, 933-34 (N.Y. App. Div. 1993) (additional citations omitted)) (emphasis added). As a result, the *Davis* court found that the plaintiff-borrower therein, who was suing the bank-transferee for wrongful foreclosure, could not benefit from the fact that the bank had acquired his debt in violation of a trust's PSA; this was because the plaintiff-borrower had no standing to contest the transfer as he was not a party to the trust. *Id.* (*citing Reinagle v. Deutsche Bank Nat'l Trust Co.*, 735 F.3d 220, 228 (5th Cir. 2013)).

The Western District of Texas has likewise come to the same conclusion. In *Saucedo v. Deutsche Bank National Trust Company*, No. SA-12-CV-868, 2013 U.S. Dist. LEXIS 23427 (W.D. Tex. Feb. 20, 2013), the plaintiffs made substantially the same arguments as in *Davis*, asserting that the holder of a promissory note could not foreclose on the plaintiff's property because under New York law the original transfer of the note was void as a result of its having been assigned to a trust in violation of the trust's PSA, including, as here, the PSA's REMIC provisions. *Id.* at *2-5. The court agreed that if § 7-2.4 rendered the late transfer of the note to the trust void, then the plaintiffs would certainly be entitled to attack the validity of the note's transfer; "[a]fter all, if the assignment to the trust [were] void, plaintiffs would theoretically be exposed to the possibility of double liability when the true holder of the note came forward to collect on it." *Id.* at *13 (citation omitted). However, in granting the defendants' motion to

8

dismiss, the *Saucedo* court, like the *Davis* court, noted that "New York case law indicates that acts in contravention of a trust may be ratified, and are therefore merely voidable, not void." *Id.* at *14 (*citing Bank of Am. Nat'l Ass'n v. Bassman FBT, L.L.C.*, 981 N.E. 2d 1, 7 (Ill. App. Ct. 2012)).

Under New York law,[31] the finding that such a transfer is voidable, rather than void, is dispositive. "Litigants who are not beneficiaries of a trust lack standing to enforce the trust's terms or to challenge the actions of the trustee." *Tran v. Bank of New York*, No. 13-Civ-580-RPP, 2014 U.S. Dist. LEXIS 40261, at *13 (S.D.N.Y. Mar. 25, 2014) (*citing In re Estate of McManus*, 390 N.E.2d 773, 774 (N.Y. 1979) (additional citations omitted)). Thus, the defendants herein would be unable to challenge the validity of the transfer of the promissory note under New York law, as the transfer would be merely voidable, not void, and the defendants were neither parties to, nor third party beneficiaries of, the PSA such that they would have standing to challenge the validity of the note's transfer. *See id.* at *13 (applying New York law, and stating that "the Trustee Defendants argue that the Plaintiffs are neither parties to nor third-party beneficiaries of the PSAs, and therefore lack standing to assert claims based on breaches of those agreements. This argument has merit.").

In *Tran*, a group of plaintiff-mortgagors sued various defendant-trustees of a several residential mortgage-backed securities trusts created under New York law. *Id.* at *1-6. Each of the trusts in question was created pursuant to a PSA, and the plaintiff-mortgagors sued to enjoin the foreclosure of their properties, arguing that the defendant-trustees never acquired ownership of the plaintiff-mortgagors' loans because the delivery of the trust assets was not completed until after the closing date, in violation of the PSA. *Id.* at *7-9. The *Tran* plaintiffs, as the defendants

---

[31] *See* Def.'s Opp. [Doc. 16], at 7 (*citing* PSA [Doc. 16-4], at 62, Section 11.04 (additional citation omitted)) (stating that "[t]he LBUBS Trust is a common law trust governed by New York law).

9

herein, relied largely on the previously-discussed *Erobobo* opinion, as well as the decision in *Glaski v. Bank of America*, 218 Cal. App. 4th 1079 (Cal. Ct. App. 2013). *Id.* at *19. In rejecting the plaintiffs' arguments, the court for the Southern District of New York stated that, "even assuming that the transfer of [the] Plaintiffs' mortgages to their respective trusts violated the terms of their respective PSAs, the after-the-deadline transactions would merely be voidable at the election of one or more of the parties—not void." *Id.* at *21. While void contracts are invalid at their creation, voidable contracts are those where one or more of the parties have the power "to avoid the legal relations created by the contract." *Id.* at *19. The *Tran* court's decision, consistent with the majority of case law addressing this issue, ultimately found that the plaintiff-mortgagors lacked standing to bring a claim based on any alleged breaches of the PSA. *Tran*, 2014 U.S. Dist. LEXIS 40261, at *24.

Having found that the transfer of the note to the plaintiff herein was either valid, or, if merely voidable, that the defendants are not in a position to challenge the transfers' validity, this becomes a relatively simple matter. "In Louisiana, a contract of guaranty is equivalent to a contract of suretyship." *Finova Capital Corp. v. Short's Pharm., Inc.*, 904 So. 2d 57, 59 (La. Ct. App. 2005) (*citing Commercial Nat'l Bank in Shreveport v. Pipe Sales of Shreveport, Inc.*, 600 So. 2d 130 (La. Ct. App. 1992), *writ denied* 604 So. 2d 1006 (La. 1992)). A contract of surety, or a guaranty, is "an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so." LA. CIV. CODE ANN. art. 3035 (1988). The only formal requirements for a contract of surety are 1) that it be express, and 2) in writing. LA. CIV. CODE ANN. art. 3038 (1988). Furthermore, where there are multiple sureties, each is liable to the creditor *in solido* "even in the absence of an express agreement of solidarity. LA. CIV. CODE ANN. art. 3045 (1988).

In the instant case, there is a valid contract of suretyship between the plaintiff and the defendants in which the defendants guaranteed the entire debt due to the plaintiff on the note by LCRD in the event of LCRD's bankruptcy.[32] LCRD has since entered into voluntary bankruptcy.

A "bank's burden of proof on its demand to collect on a promissory note is not difficult. The lender 'must merely produce the note in question to make out a *prima facie* case. The burden then shifts to the defendant to prove any affirmative defenses.'" *Gulf Coast Bank & Trust Co. v. Elmore*, 57 So. 3d 553, 556 (La. Ct. App. 2011) (*citing Colonial Mortg. & Loan Corp. v. James*, 812 So.2d 817, 820 (La. Ct. App. 2002)). This rule is equally applicable to a guarantor. *See id.* (citation omitted). Although the defendants set forth several affirmative defenses in their Answer [Doc. 13],[33] they have proved none, and argue none, in either their Opposition [Doc. 16] to the plaintiff's Motion for Summary Judgment [Doc. 14], or in their own Cross-Motion for Summary Judgment [Doc. 17].

The plaintiff herein rightfully possesses a valid promissory note evidencing LCRD's original indebtedness to Lehman.[34] The plaintiff additionally has set forth sufficient evidence demonstrating the proper negotiation of the note from Lehman to the plaintiff,[35] and the defendants' sole argument in defense—seeking to invalidate the transfer of the promissory note upon which the Commercial Guaranty is predicated—has been shown to be without merit. The defendants are therefore bound by a valid contract of suretyship[36] obligating them to pay to the holder of the note the entire remaining debt evidenced by the note in the event that any part of

---

[32] *See supra* note 12.
[33] *See* Answer [Doc. 13], setting forth affirmative defenses predicated on 1) standing; 2) no right of action; 3) failure to state a claim; and 4) a fourth defense in which the defendants state that they reserve the right to add additional defenses as discovery progresses.
[34] *See generally* Promissory Note [Doc. 16-1].
[35] *See generally* Allonges [Doc. 14-2], at 14-17.
[36] *See generally* Commercial Guaranty [Doc. 16-2].

11

the property securing the note becomes an asset in a voluntary bankruptcy.[37] The subject property has since become an asset in a Chapter 11 bankruptcy proceeding in the United States Bankruptcy Court for the Eastern District of New York.[38] Accordingly,

**IT IS ORDERED** that the plaintiff's Motion for Summary Judgment [Doc. 14] be and hereby is **GRANTED**. The defendants are hereby found liable *in solido* as guarantors of the subject Promissory Note [Doc. 14-2], under the Commercial Guaranty of Recourse Obligations of Borrower [Doc. 14-6], to the plaintiff for the remaining principal amount due, plus interest, plus default interest, late fees, and attorney's fees, in accordance with the written agreements previously mentioned, minus any funds held in suspense.

**IT IS FURTHER ORDERED** that the defendants' Cross Motion for Summary Judgment [Doc. 17] be and hereby is **DENIED**.

Lake Charles, Louisiana, this ___ day of _____, 2014.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[37] *See id.* at 1.
[38] *See* Bankruptcy Pet. [Doc. 1-2], at 21.